[Cite as *Davis, Pike Cty. Treasurer v. Damron*, 2026-Ohio-1469.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

|  |  |
|---|---|
| | : |
| DONALD E. DAVIS, | |
| TREASURER OF PIKE COUNTY, OHIO, | : |
| | |
| Plaintiff-Appellee, | : CASE NO. 25CA941 |
| | |
| v. | : |
| | |
| THE UNKNOWN HEIRS… | : DECISION AND JUDGMENT ENTRY |
| OF CHADWICK DAMRON, ET AL., | |
| | : |
| Defendants-Appellants. | |
| | : |

_____

APPEARANCES:

Gary Damron, pro se.

Ed Rhoads, Waverly, Ohio, for appellee.
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:4-16-26
ABELE, J.

{¶1} This is an appeal from a Pike County Common Pleas Court judgment on a motion to set aside a sheriff's sale of real property.  Gary Damron, defendant below and appellant herein, assigns two errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE FAILURE TO PROVIDE STANDARD LEGAL
> NOTIFICATION THROUGH REGULAR MAIL REPRESENTS A
> FUNDAMENTAL BREACH OF PROCEDURAL DUE PROCESS,
> POTENTIALLY RENDERING SUBSEQUENT LEGAL
> PROCEEDINGS INVALID."

SECOND ASSIGNMENT OF ERROR:

"TRANSMITTING LEGAL COMMUNICATIONS VIA EMAIL
DURING A HOLIDAY WEEKEND FAILS TO MEET
ESTABLISHED LEGAL COMMUNICATION STANDARDS AND
POTENTIALLY COMPROMISES THE DEFENDANT'S RIGHT
TO TIMELY AND PROPER LEGAL NOTICE."

**{¶2}** On June 13, 2024, Pike County filed a R.C. 5721.18(A) complaint in foreclosure of real property located at 1793 Hickson Run Road, Chillicothe, Ohio 45601, permanent parcel number 5-025500.0000, for delinquent property taxes, assessments, and penalties against unknown heirs, devisees, personal representatives, successors and assigns of Chad Wick Damron, aka Chadwick "Chad" Damron, including appellant, Gary Damron.

**{¶3}** On July 22, 2024, appellant, represented by counsel Jim Cutright, answered and admitted the allegations contained in the complaint and further admitted that he, Jeannie Humphrey, and Colleen Rutherford are the sole next of kin of Chadwick Damron, and, to appellant's knowledge, Chadwick Damron did not have a last will and testament. Appellant further stated that if the premises described in the complaint is sold, any sale proceeds after the payment of real estate taxes, assessments, penalties, interest and liens held to be valid by the court should be paid to him and his siblings as next of kin.

{¶4} On September 10, 2024, the trial court granted appellee's motion for an order finding publication necessary on the defendants. On November 12, 2024, appellee moved the court for a Civ.R. 56 summary judgment. After a non-oral hearing on December 9, 2024, on December 12, 2024 the court granted summary judgment to appellee. The court then issued an Order of Sale on December 19, 2024 and the sheriff's sale occurred on January 31, 2025.

{¶5} On April 4, 2025, appellant filed a motion to set aside the sheriff's sale. Appellant alleged that "[i]t was noted in certain pleadings by Plaintiff that Defendant Damron was served with notice of the sheriff's sale but no notice was ever given to Defendant Damron (or Defendant Humphrey and Defendant Rutherford)." Appellant argued that Notice by Publication for "unknown heirs" was not sufficient service for known heirs. As such, appellant requested that the January 31, 2025 sheriff's sale be set aside.

{¶6} At the May 7, 2025 hearing on the motion to set aside the sheriff's sale, appellant's counsel, Jason Miller, indicated that Attorney Jim Cutright, appellant's previous counsel, had died. The following exchange occurred:

> MR. MILLER: Your Honor, uh, I just want to make a record of the proceedings. Uh, we understand what's going on. I want to make it clear that we filed a motion to set aside the sheriff's sale based on some notice provisions that my client and I, uh, really firmly believed had not been satisfied. He did answer the complaint in this case -
>
> BY THE COURT: Yes.

MR. MILLER - - through Attorney Jim Cutright, who is now deceased -

BY THE COURT: Yes.

MR. MILLER - - back on July 22nd of last year. And so, he would have been required to receive notice of the pending sale.

Uh, I - - when I came in on this at the 11th hour, uh, I believed, Gary had believed, the office staff of Mr. Cutright had believed that that notice had never arrived.

Mr. Roads showed me today a print off of an email that was sent on December 26th of 2024 to Jim Cutright's, uh, office account that is directed directly to Jim not to the main hub of the receipt of emails. And I was able to confirm through the office staff at Jim's office when they got into his personal computer that that did appear to be there. I don't know if it was delivered into the main box. I don't know if it was delivered into the junk mail, but that it was delivered.

BY THE COURT: Okay.

MR. MILLER: However, the office had not seen that.

BY THE COURT: Okay.

MR. MILLER: That was a week, uh, there was about a ten-day period of time during the holidays when Jim Cutright's office was not open. And no one ever laid eyes on that email from that point clear up until we stand here today.
BY THE COURT: Okay.

MR. MILLER: When Ed handed me that today, I saw it for the very first time not more than 20 minutes ago. So, we understand that. But I wanted to just make it clear to the Court that on that notice, on the certificate of service, it does indicate that it was delivered by U.S. Mail. Uh, it was not delivered by U.S. Mail, it was delivered by email. Uh, I don't know if that impacts the finding of the Court that the certificate of service was not accurate in its delivery. And, you know, had it been delivered by regular mail, um, Mr. Cutright's office would have very readily seen that –

BY THE COURT: Okay.

MR. MILLER: - - and would have readily responded to it, let my client know exactly that it had come in. Uh, that had not been done. And so, we are contending to the Court that there is deficiencies in that notice.

BY THE COURT: Okay.

MR. MILLER: I want the Court to take that into consideration. And again, if it had indicated an email delivery on - - on the notice, I'm not saying that Jim would have seen it more readily. However, it would have been, uh, more clear that if it had been delivered on regular U.S. mail, that he - - he would have gotten it.

BY THE COURT: Okay.

MR. MILLER: That's what it was - - that's what the certificate states. So, we're asking the Court to take that into consideration. Mr. Damron did not have notice of it. Um, Mr. Cutright did not see notice of it. The office did not see notice of it, nor did I.

BY THE COURT: Okay.

MR. MILLER: Uh, when we finally did get the notice, we pulled it off the internet. In fact, Jim's office pulled it off of the internet for the very first time a day before I met with Gary Damron.

BY THE COURT: Okay.

MR. MILLER: Uh, did not have it in any other form. So, we're asking the Court to take that into consideration and find that the notice was insufficient.

. . .

BY THE COURT: Okay. You know, looking at this, and Mr. Rhoads is right as far as how the foreclosure process works to get that minimum bid. A one - - one for each. Basically, like you get what you get, and you know, that's pretty much it. Yeah, in this case we, uh, both sides do agree that there was an email sent from Mr. Rhoads' office to Mr. Cutright's office. Uh, both sides have a - - have a copy of that. And that's what I really have to go by as well, too. There was a notice sent to Mr. Cutright. I don't know if we'll ever know why that, uh, Mr. Damron

wasn't contacted on that. You know, I can't say. Nobody can say. And Mr. Cutright is not here to tell us. I will say, I did know him, you know, for years. I know he was very, very conscientious. That, but still we just don't know, but what we do have is copies of that email. And that being the case, I will deny the motion. Okay.

**{¶7}** On May 16, 2025, the trial court issued an entry on the motion to set aside the sale, that stated, "[u]pon the statements of counsel presented to this Court, the Court finds that service of the Notice of Sale was made upon James K. Cutright, who was at the time attorney for Defendant Gary Damron, by email on December 26, 2024, and this was confirmed by Attorney Cutright's office." Thus, the court held, "[s]ince it appears to this Court's satisfaction that Defendant Gary Damron, through his attorney, was timely served with a Notice of Sale, said defendant's Motion to Set Aside the Sale is not well taken and is hereby denied." This appeal followed.

I.

**{¶8}** In his first assignment of error, appellant asserts that the failure to provide notification through regular mail represents a fundamental breach of procedural due process, potentially rendering subsequent legal proceedings invalid.

**{¶9}** Whether a trial court complied with the Ohio Rules of Civil Procedure presents a question of law we review de novo. *Franklin Univ. v. Sharpe*, 2024-Ohio-4881, ¶ 6 (10th Dist.), citing *Anderson v. Bright Horizons Children's Ctrs., LLC*, 2022-Ohio-1031,

¶ 89 (10th Dist.). Compliance with the civil rules of procedure is mandatory. *LaNeve v. Atlas Recycling, Inc.,* 2008-Ohio-3921, ¶ 23. "[T]he Civil Rules are not just a technicality, and we may not ignore the plain language of a rule in order to assist a party who has failed to comply with a rule's specific requirements." *Id.* "Proper service under the civil rules is mandatory even if a party represented by counsel might otherwise learn of the action taken by the court." *Parallel Homes, L.L.C. v. Stephens*, 2014-Ohio-840, ¶ 13 (1st Dist.); *Yost v. McNea*, 2021-Ohio-2145, ¶ 21 (6th Dist.).

{¶10} Generally, service of process that is reasonably calculated to reach the interested parties is "constitutionally sound." *Akron-Canton Regional Airport Auth. v. Swinehart,* 62 Ohio St.2d 403, 406 (1980). The presumption of proper service in cases where the civil rules regarding service are followed is rebuttable. *Kapszukiewicz v. Samuel*, 2007-Ohio-2152, ¶ 14 (6th Dist.). The complaining party bears the burden to rebut the presumption. *Id.* at ¶ 15.

{¶11} Civ.R. 5 governs the service and filing of pleadings and other papers subsequent to the original complaint. Civ.R. 5(A) provides as follows:

> Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and

every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties.

Civ.R. 5(B) instructs how service is made:

(1) Serving a party; serving an attorney

Whenever a party is not represented by an attorney, service under this rule shall be made upon the party.  If a party is represented by an attorney, service under this rule shall be made on the attorney unless the court orders service on the party. . .

(2) Service in general

 A document is served under this rule by:

(a) Handing it to the person;

(b) Leaving it:

   (i) At the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or

   (ii) If the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

(c) Mailing it to the person's last known address by United States mail, in which event service is complete upon mailing;

(d) Delivering it to a commercial carrier service for delivery to the person's last known address within three calendar days, in which event service is complete upon delivery to the carrier;

(e) Leaving it with the clerk of court if the person has no known address; or

(f) Sending it by electronic means to a fascimile number or e-mail address provided in accordance with Civ.R. 11 by the attorney or party to be served, or, if mutually agreed in writing by all counsel and unrepresented parties, any

other electronic media platform(s), in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person served.

{¶12} As set forth above, Civ.R. 5(B)(1) requires that when a party is represented by counsel, service must be made on that party's attorney. *Ohio Patrolmen's Benevolent Association v. Cleveland,* 2024-Ohio-2651, ¶ 13, citing *Ohio Patrolmen's Benevolent Association v. Cleveland*, 2022-Ohio-1403, ¶ 19-20 (8th Dist.). Appellant contends that service of the notice of the sheriff's sale must always be made through regular mail. However, the clear language of Civ.R. 5(B) establishes that, although service may be perfected by personal delivery or by mailing a document to a person's last known address, these are not the only permissible methods. Notably, Civ.R. 5(B)(2)(f) authorizes electronic service by e-mail. *Columbus State Community College v. Chanthunya,* 2025-Ohio-4967, ¶ 9 (2d Dist.).

In *Parallel Homes, supra,* 2014-Ohio-840, the court observed:

Civ.R. 5(A) states that every pleading subsequent to the original complaint "shall be served upon each of the parties[.]" Civ.R. 5(B)(1) further requires service on the attorney of record if a party is represented by an attorney. The rational for this rule is that a party represented by counsel usually speaks through counsel, and counsel "is in a better position to understand the legal import of any documents required to be served on his or her client and the nature of the action to be taken." *Swander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.*, 51 Ohio St.3d 131, 134, 554 N.E.2d 1324 (1990), syllabus; *Roberts v. Skaggs*, 176 Ohio App.3d 251, 2008-Ohio-1954, 891 N.E.2d 827, ¶ 12 (1st Dist.).

*See also Patel v. Lambrecht,* 2014-Ohio-2953, ¶ 20 (4th Dist.),
citing *Parallel* at ¶ 12; *Treas. of Cuyahoga Cty. v. Fitzgerald*,
2022-Ohio-4386, ¶ 24 ("Because Fitzgerald was represented by
counsel, Civ.R. 5(B)(1) required the county to serve written notice
of the sale on counsel, and since Civ.R. 5(B)(2)(f) provides that a
document may be served by sending it to counsel's email, service is
proper by requesting email service through the court's electronic
filing system.").

**{¶13}** Although appellant does not raise the issue here, at the
hearing he also challenged the fact that the service certificate
inaccurately stated that the notice of the sheriff's sale had been
sent via U.S. mail, when it had been sent via e-mail.  The trial
court appeared to have concluded that this fact did not affect the
outcome of this case.  We agree.  *See Akron-Canton Regional Airport
Auth., supra,* 62 Ohio St.2d at 406( "So long as service is
'reasonably calculated' to reach interested parties, then the
service is constitutionally sound. Accordingly, it is not necessary
that service be attempted through the most likely means of success
ordinarily residence service; it is sufficient that the method
adopted be 'reasonably calculated' to reach its intended
recipient.").

**{¶14}** In the case at bar, we believe that the trial court
correctly concluded that appellee emailed notice of the sheriff's

sale on December 26, 2024 to appellant's then-counsel, Attorney Cutright. Accordingly, we overrule appellant's first assignment of error.

II.

**{¶15}** In his second assignment of error, appellant asserts that transmitting legal communications via e-mail during a holiday weekend fails to meet established legal communication standards and potentially compromises a defendant's right to timely and proper legal notice. Appellant, however, sets forth no legal authority to support of his claim and we find none.

**{¶16}** Appellee points out that at the May 7, 2025 hearing, appellant's counsel confirmed that the notice of sale had been served by e-mail upon appellant's attorney at the time service was made. The trial court referred to a copy of the e-mail service as proof of service in the case at bar. Pursuant to Civ.R. 5(B)(2)(f), e-mail service is complete upon transmission. Thus, the service was complete upon transmission of the e-mail. *See Columbus State, supra,* 2025-Ohio-4967, at ¶ 10 ("under Civ.R. 5(B)(2)(f), service was complete upon transmission and remained effective provided CSCC did not learn that e-mail service failed to reach him. The record contains no evidence that CSCC's e-mail never reached Chanthunya or that CSCC discovered such a fact. Contrary to Chanthunya's argument, nothing in Civ.R. 5(B) obligated CSCC to serve him either by personal delivery or by mailing a

document to his last known address.").

{¶17} Thus, we believe that the trial court properly concluded that (1) Civ.R. 5(B)(2)(f) permits e-mail service, and (2) e-mail service occurred in this case upon transmission on December 26, 2024.

{¶18} Accordingly, for all of the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY


It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court


BY:_____
    Peter B. Abele, Judge


NOTICE TO COUNSEL

Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.